IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**HERAMB K. SINGH**, **M.D., BORDER
RADIOLOGY CONSULTANTS, P.C.,
and EL PASO/VINTON DIAGNOSTICS
P.A.**,

               Plaintiffs,

v.

                                           No.6:07-CV-00435-BB

**MEMORIAL MEDICAL CENTER, INC.,
LIFEPOINT HOSPITALS, INC., d/b/a MEMORIAL
MEDICAL CENTER, NATHAN WILLIAMS,
BRUCE SAN FILIPPO, DENNIS MYERS, RAVI GORAV,
THOMAS JACKSON, PAUL HERZOG,
and GEOFFREY JONES.**

               Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion Dismiss Plaintiffs' Claims Under the Sherman Act and the New Mexico Antitrust Act, filed on May 11, 2007 **[Doc. 3]**. Defendants Lifepoint Hospitals, Memorial Medical Center, Nathan Williams, Bruce San Filippo, Dennis Myers, Ravi Gorav, Thomas Jackson, Paul Herzog and Geoffrey Jones brought this motion seeking to dismiss Count III of Plaintiffs' complaint, which alleges that all of the above-named defendants and Alex Lobera[1], a radiologist in Las Cruces, New Mexico, conspired to

---

[1] Dr. Alex Lobera, was added to the action in Plaintiffs' Amended Complaint, after the filing of Defendants' motion. Plaintiffs did not seek leave to add Dr. Lobera to the action, as per Fed. R. Civ. P. 21, and he does not appear to have been served with process. He appears to be unrepresented in the present matter and has not entered an appearance on his own behalf. In short, while Dr. Lobera's name appears somewhat inconsistently in the header portion of Plaintiff's amended pleadings, he does not actually appear to be a party to this action.

restrain competition and inhibit trade in the radiology market of southern New Mexico and western Texas.[2]

The Court, having considered the motion, response, reply, and relevant law, and being otherwise fully informed, finds that the motion will be GRANTED.

**I. Background**

Plaintiffs Dr. Heramb K. Singh, Border Radiology Consultants ("BRC"), and El Paso/Vinton Diagnostics filed a complaint which alleges a cause of action under the Sherman Act §1 (15 U.S.C. §1) and various common law and statutory causes of action under New Mexico law.[3] Federal jurisdiction is asserted on the basis of federal question jurisdiction, 28 U.S.C. § 1331, giving rise to supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367(a).

Dr. Singh is a radiologist who resides in El Paso, Texas, and practices medicine in Doña Ana County, New Mexico and El Paso, Texas. He is the owner of BRC, a New Mexican professional corporation, and El Paso/Vinton Diagnostics[4] a Texan physician association. Dr. Singh and BRC provided radiology services at Memorial Medical Center ("MMC") up until the termination of their contract in July, 2006.

---

[2] Plaintiffs allege in different places in their complaint that the relevant geographic market is southwestern New Mexico [Plaintiffs' Amended Complaint at 5]; Doña Ana County [Amended Complaint at 11]; and southern New Mexico and western Texas [Amended Complaint at 15]. As the relevant count for present purposes is Count III, and in Count III Plaintiffs allege that the relevant geographic market is "southern New Mexico and western Texas" [Amended Complaint at 15] the Court will adopt this as the relevant market for purposes of considering this motion.

[3] Plaintiffs also bring a claim under the New Mexico Antitrust Act, N.M. Stat. Ann. §57-1-1. This law is patterned after Section 1 of the Sherman Antitrust Act, and mandates a construction "in harmony with judicial interpretations of the federal antitrust laws." N.M. Stat. Ann. § 57-1-15; *Smith Mach. Co. v. Hesston Corp.*, 878 F.2d 1290, 1292-93 (10th Cir. 1989). Thus the analysis of the claims under Section 1 applies equally to these claims.

[4] Plaintiffs do not allege any facts regarding El Paso/Vinton Diagnostics' interest in the action.

Plaintiffs allege that Dr. Singh and BRC were given the contract to establish a radiology practice at Memorial Medical Center in Las Cruces, New Mexico [Amended Complaint at 7 (Doc. 6)]. According to Plaintiffs, MMC treats the largest number of radiology cases in Doña Ana County and southwest New Mexico, and is the preeminent healthcare facility in this area. [Amended Complaint at 6]. Plaintiffs allege that given Dr. Singh's and BRC's skill and experience, they received an increasing number of referrals at the hospital from other physicians in neighboring counties as well as nearby El Paso, Texas. Indeed the success was so great that Plaintiffs note "this had the effect of lowering the revenues for his competitors, but greatly increasing revenues for both Dr. Singh, BRC, and MMC." [Amended Complaint at 7]. Plaintiffs further allege that as a result of the extraordinary revenues generated by their radiology practice at MMC, Defendants Lifepoint Hospitals, MMC, Jones and Lobera developed a plan to steal away Dr. Singh's radiology practice at MMC. This conspiracy was allegedly carried out through a series of negative peer review actions conducted by Defendants Gorav, Herzog, Williams and MMC, and a referral to the New Mexico Monitored Treatment Program by Defendants San Filippo and Williams. [Amended Complaint at 8-9]. Shortly after these incidents MMC terminated Dr. Singh's and BRC's contract.

Plaintiffs filed this action in March, 2007. The MMC Board reached a final determination on the peer review actions in June, 2007, adopting the conclusion that Dr. Singh's privileges should be suspended at MMC. Plaintiffs allege that the termination of their contract for radiology services not only caused Dr. Singh to lose his prosperous radiology practice, but also reduced competition in the radiology market of southwestern New Mexico[5] by eliminating Plaintiffs as competitors. Plaintiffs allege that this exclusion had the effect of allowing Defendants to raise prices and take all the relevant revenue without any competition by Plaintiffs. Plaintiffs additionally claim that by ending the contract with the hospital the Defendants have monopolized the only facilities in southwestern New Mexico with equipment essential to

---

[5]Plaintiffs allege the reduction of competition in southwestern New Mexico, but do not mention western Texas, the larger part of the relevant market as defined by Plaintiffs in their complaint.

radiology services, have eliminated certain types of radiology services at MMC, and have almost completely excluded Plaintiffs from the relevant market.

**II. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss filed pursuant to Rule 12(b)(6), this Court is required to accept as true all well-pleaded facts alleged in the complaint and view them in the light most favorable to the nonmoving party. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). The Supreme Court recently clarified the standard of pleading, finding that a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (dismissing complaint under Section 1 of the Sherman Act for failure to state a claim). While this standard does not require detailed factual allegations, the Court found that the claim must contain more than mere "labels and conclusions" and that a "formulaic recitation of the elements of a cause of action" will not meet this pleading standard. *Id.* at 1965. In *Bell* the Court distanced itself from the language of *Conley v. Gibson*, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). Under the *Bell* standard, the plaintiff's claim must not just be possible under some set of facts, but rather the plaintiff must provide enough facts, taken as true, to establish that his claim is plausible. *Bell,* 127 S. Ct. at 1965; *see also, Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims") (emphasis in original). This standard of pleading is very much in line with the standard for antitrust claims already established by the Tenth Circuit, which has noted that "[t]he use of antitrust 'buzz words' does not supply the factual circumstances necessary to support [a plaintiff's] conclusory allegations." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.* 964 F.2d 1022, 1026 (10th Cir. 1992).

**III. Dennis Myers**

As an initial matter the Court notes that Plaintiffs have alleged no facts regarding Mr. Myers, the Director of Imaging Services. As the Supreme Court made clear in *Bell*, the complaint must "have enough factual matter (taken as true) to suggest that an agreement was made." *Bell,* 127 S.Ct. at 1965. Plaintiffs allege no facts regarding any agreement involving Mr. Myers, other than broad statements alleging that all Defendants conspired. Mr. Myers, unlike the majority of his co-defendants, is not a medical doctor, and Plaintiffs allege no participation by Mr. Myers in either the peer review process or in the alleged conspiracy to steal their practice. With no allegations of any behavior on the part of Mr. Myers, the amended complaint falls short of the necessary facts to allege that he participated in a conspiracy under §1 of the Sherman Act, thus the claims against him in Count III must fail as a matter of law and are hereby dismissed.

**IV. Sherman Act Section 1**

Section 1 of the Sherman Act forbids "[e]very contract, combination...or conspiracy, in restraint of trade." 15 U.S.C. §1. While Section 1 is a criminal statute, private parties may enforce Section 1 of the Sherman Act via Section 4 of the Clayton Act which allows any person injured in his or her business or property to sue for treble damages, 15 U.S.C. §15, and via Section 16 of the Clayton Act which allows those threatened with loss or damage by a violation of the antitrust laws to sue for injunctive relief. 15 U.S.C. §26.

The Tenth Circuit has found that a plaintiff must plead three elements to state a claim for a violation of Section 1: (1) a contract, combination, or conspiracy among two or more independent actors; (2) that unreasonably restrains trade; and (3) is in, or substantially affects, interstate commerce. *TV Commc'ns,* 964 F.2d at 1027. Defendants challenge various aspects of Plaintiffs' pleadings, however their fundamental contention is that Plaintiffs have pled personal harm but not harm to competition or the market more generally, and thus have failed to adequately plead an unreasonable restraint of trade. Plaintiffs attempt to circumvent the necessity of pleading an effect on competition by claiming that they have pled an antitrust violation that is a *per se* violation of Section 1, and thus presumptively an unreasonable restraint of trade. [Plaintiffs' Response at 2-3].

While the rules governing antitrust are complex, the fundamental purpose of the antitrust laws is "the protection of competition, not competitors." *Brown Shoe v. U.S.*, 370 U.S. 294, 320 (1962); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 264-65 (2d Cir. 2001). Thus perhaps the most basic requirement to successfully state a claim under the Sherman Act, is the requirement that the plaintiff allege that the asserted violation has had an anticompetitive effect; in other words that the defendant's actions have injured competition and not solely the plaintiff. *Nynex Corp. v. Discon*, 525 U.S. 128, 135 (1998) ("plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, i.e., to competition itself."); *see also Full Draw Productions v. Easton Sports Inc.,* 182 F.3d 745, 754 (10th Cir. 1999) (evaluating whether plaintiff pled an injury to competition); IIA Phillip E. Areeda, et. al., *Antitrust Law* ¶337 (3rd ed. 2007) (noting that where there is no injury to competition there is no violation of the antitrust laws). As the Seventh Circuit has aptly noted, "[l]osing business to a competitor is an inevitable consequence of the economic system that the Sherman Act was designed to protect; some enterprises will prevail and others will not, but it is the function of §1 to compensate the unfortunate only when their demise is accompanied by a generalized injury to the market" *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir. 1984); *see also Hunt v. Crumboch*, 325 U.S. 821, 826 (1945) (Sherman Act "does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce").

*A. Per Se Violation of the Statute*

Plaintiffs maintain that they have alleged a *per se* violation of the statute in the form of a horizontal group boycott by Drs. Lobera and Jones. [Plaintiffs' Response at 2-3]. Plaintiffs contend that this allegation sufficiently establishes an effect on competition to withstand the motion to dismiss. *Id.* Unreasonable restraints of trade come in two forms: (1) *per se* violations of the statute; or (2) other conduct that has the purpose or effect to create an unreasonable restraint of trade. *TV Commc'ns,* 964 F.2d at 1027. Actions are found to be *per se* illegal when their "pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pacific Ry. Co. v. U.S.*, 356 U.S. 1, 5 (1958). While not an exhaustive list, horizontal or vertical price fixing, tying

arrangements, horizontal market divisions, reciprocal dealing arrangements and horizontal group boycotts are among the restraints traditionally condemned as per se illegal.[6] 1 Julian O. von Kalinowski et al., *Antitrust Laws and Trade Regulation* §12.02[2] (Lexis 2007).  The *per se* analysis applies only to a limited number of cases, and other restraints of trade are analyzed using a rule of reason analysis. *Diaz v. Farley*, 215 F.3d 1175, 1182 (10th Cir. 2000).  Thus while horizontal group boycotts, i.e. concerted refusals to deal by competitors at the same market level, have oftentimes received *per se* treatment by the courts, the Supreme Court has found that vertical refusals to deal, i.e. refusals to deal by competitors at different market levels, receive a rule of reason analysis unless they involve price fixing behavior. *Business Electronics Corp. v. Sharp Electronics Inc.,* 485 U.S. 717, 724 (1988).

　　　　Plaintiffs attempt to create the spectre of a group boycott, and thus a *per se* violation of the statute, from the facts alleged.  This attempt is unsuccessful on two counts.  First, in their Response, Plaintiffs allege that Drs. Jones and Lobera, as horizontal competitors to Dr. Singh and BRC, conspired together to have him removed by MMC, thus establishing a claim for a group boycott, and a *per se* violation of the statute. [Plaintiffs' Response at 2-3].  Plaintiffs, however, do not make any such contention in their amended complaint. Rather they allege in multiple places that Drs. Jones and Lobera conspired with MMC, the hospital, to destroy their practice. [Amended Complaint at 10].[7]  Plaintiffs attempt to introduce the idea that Drs. Jones and Lobera conspired together, independently of the hospital, for the first time in their Response.  It is well-established, "that in determining whether to grant a motion to dismiss, the district court...[is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

---

[6] Restraints on trade are normally referred to as either horizontal or vertical.  Horizontal restraints are those implemented by a competitor at the same market level, while vertical restraints on trade are those that are implemented by a competitor at a different market level.

[7] Indeed, considering that Dr. Lobera does not appear to be a party to the instant action at all, it is difficult to see how Plaintiffs intended to succeed on their claim of a group boycott. *See* note 1, *supra*.

7

Despite Plaintiffs' representations to the contrary, it is inimical to the language of the actual complaint to find that Dr. Jones and Lobera independently conspired to exclude a horizontal competitor. Rather construing the facts in the light most favorable to the Plaintiffs, Plaintiffs have alleged several different conspiracies, all of which involve doctors conspiring with the hospital, MMC and its corporate operator Lifepoint Hospitals. MMC, as a hospital, is not a horizontal competitor to Plaintiffs, but rather stands in a vertical relationship to Drs. Lobera and Jones. Thus it appears clear Plaintiffs have alleged a vertical restraint on trade. *Coffey v. Healthtrust, Inc.,* 955 F.2d 1388, 1392 (10th Cir. 1992) (finding as a matter of law that any relationship that existed among physicians and the hospital was vertical rather than horizontal). Since vertical refusals to deal only receive *per se* treatment where there is price fixing behavior, *Business Electronics Corp.,* 485 U.S. at 724, this restraint would be governed by the rule of reason.

Second, even assuming Plaintiffs sufficiently alleged a horizontal group boycott, such a boycott would not receive *per se* treatment. Courts have been hesitant to apply a *per se* analysis to decisions relating to health care "[b]ecause agreements pertaining to the provision of health care services often raise issues of professional medical judgment." *Farley*, 215 F.3d at 1184. Indeed the Tenth Circuit has stated that "[a]llegations of a concerted refusal to deal arise frequently in the health care industry. Denial of hospital staff privileges is frequently alleged to be the product of a group boycott organized by competing health care providers. In such cases, the courts have generally applied the rule of reason, holding that a hospital must be allowed, in conjunction with its medical staff, to exclude individual doctors on the basis of their lack of professional competence or unprofessional conduct." *Id.* (quoting ABA Section of Antitrust Law, Antitrust Law Developments 118 (4th ed. 1997)). Given the standard enunciated by the Tenth Circuit, it seems clear that any restraint on trade alleged would not be properly analyzed under the *per se* rubric, but rather governed by the rule of reason.

    *B. Anticompetitive Effect*

Turning to Plaintiffs' Amended Complaint, at the core of Plaintiffs' antitrust claim is the assertion that the termination of their contract for radiology services with MMC, their replacement with another exclusive provider, and the personal injury caused by that exclusion

had a wider effect on the market for radiology services in southern New Mexico and western Texas. Plaintiffs support this conclusion by stating that their exclusion from MMC has eliminated certain types of radiology services at that hospital, will permit Defendants to charge higher prices for radiology services, and will allow Defendants to take all the revenue from the radiology department at MMC without competition by Plaintiffs. [Amended Complaint at 15]. Plaintiffs do not allege that the prices charged are actually higher, nor that these radiology services have been eliminated from any hospital other than MMC. Finally Plaintiffs do not allege complete exclusion from the relevant market, alleging only that "[P]laintiffs have been excluded almost completely from the relevant market." [Amended Complaint at 15]. However, Plaintiffs conclude that these consequences will have a fundamental negative impact on competition in the wider market because MMC is the dominant hospital in Doña Ana County and southwestern New Mexico, a submarket of the defined geographic market. [Amended Complaint at 6].

While MMC may be the dominant hospital in Doña Ana County and southern New Mexico, the Court takes judicial notice that it is by no means the only hospital in the relevant geographic market, i.e. southern New Mexico and western Texas, with a radiology department. Indeed the relevant geographic market as defined by Plaintiffs encompasses at least eight other such hospitals.[8] The "consumer" in this transaction is MMC, not the patients and their insurers. Given the potential for health care providers to service various hospitals in a broad area, the geographical market must not be cast too narrowly. *See Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 661 (8th Cir. 2000); 2 John Miles, *Health Care and Antitrust Law* §11.11 (2007). The harm alleged by Plaintiffs concerns a single hospital, MMC. Other courts have noted that it is doubtful "whether the relevant market can be sliced so small as to embrace

---

[8]These hospitals include but are not limited to: Mountain View Regional Hospital in Las Cruces, New Mexico; Mimbres Memorial Hospital in Deming, New Mexico; Gila Regional Medical Center in Silver City, New Mexico; Providence Memorial Hospital in El Paso, Texas; Thomason Hospital in El Paso, Texas; Del Sol Medical Center in El Paso, Texas; Las Palmas Medical Center in El Paso, Texas; and University Medical Center in Lubbock, Texas. This list does not include free-standing imaging centers or radiology done in physician's offices. *See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484 (9th Cir. 1991).

only a single hospital." *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* 684 F.2d 1346, 1353 (7th Cir. 1982); *see also Leyba v. Renger*, 874 F. Supp. 1229, 1234-35 (D.N.M. 1994); Miles, *supra*. Indeed the Seventh Circuit, in reviewing the full breadth of the case law in this area has noted "[t]he cases involving staffing at a single hospital are legion. Hundreds, perhaps thousands of pages in West publications are devoted to the issues those circumstances present...Those hundreds or thousands of pages almost always come to the same conclusion: the staffing decision at a single hospital was not a violation of section 1 of the Sherman Act." *BCB Anesthesia Care Ltd. v. Passavant Memorial Area Hosp. Ass'n*, 36 F.3d 664, 667 (7th Cir. 1994) (dismissing plaintiff's section 1 complaint for failure to state a claim).

Plaintiffs provide conclusory allegations of the wider nefarious effects of their termination, but the facts of the complaint simply do not allege any direct and specific effect on the wider relevant market, and the complaint alleges no effect on competition except on Dr. Singh and BRC. Though couched in antitrust buzz words, Plaintiffs essentially allege that MMC terminated their exclusive contract, replacing them with a competitor, and that this competitor and the hospital currently earn the revenue from MMC's radiology department. The Tenth Circuit has found that this type of "reshuffling [of competitors] ha[s] no detrimental effect on competition." *Coffey,* 955 F.2d at 1393. Plaintiffs have alleged harm to a single competitor at a single hospital rather than an injury to competition. Such harm does not come within the purview of the antitrust laws, and is not the type of harm the antitrust laws intended to prevent. *See id.* The complaint thus does not allege a violation of Section 1 of the Sherman Act under the standard enunciated by the Supreme Court in *Bell,* 127 S. Ct. at 1974, and Count III should be dismissed.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the Motion to Dismiss Count III of Plaintiffs' Amended Complaint [Doc. 3] be, and hereby is, GRANTED.

Dated this 30th day of January, 2008.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE